THE BARBER ASPHALT PAVING COMPANY et al., Respondents, v. RICHARD H. FIELD et ux., Appellants.

Kansas City Court of Appeals, May 26, 1908, and January 11, 1909.

1. TAXBILLS: Correcting Mistake: Extending Boundary: Kansas City: Westport. After Kansas City extended its boundary over Westport the former city had no right to issue taxbills for street improvements where the work was not done under its order and contract; but under section 6399, Revised Statutes 1899, said city had the power to correct errors in taxbills theretofore issued by Westport by issuing new bills.

2. ————: ————: ————: ————: ————: Statutory Construction. The word "rights" as used in said section means not only property rights but also such municipal powers as were necessary to the performance and obligations and the discharge of the liabilities legally assumed and incurred by the absorbed city; and the maxim *ejusdem generis* has no application since it, like other rules of interpretation, is only used to ascertain the legislative intention.

On Motion for Rehearing.

3. ————: Judgment: Interest: Penalty. The use of the word "interest" in statutes relating to taxbills is a misnomer and means only a penalty and it is error to make a judgment bear eight per cent interest.

4. ————: ————: ————: ————: Motion in Arrest. Where the judgment shows the trial court erroneously imposed a penalty the objection is not waived by failure to include such matter in the motion in arrest.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich*, Judge.

REVERSED AND REMANDED (*with directions*).

*R. H. Field* for appellants.

(1) The statutes governing Westport as a fourth-class city undoubtedly authorized and required a levy of the cost of a street pavement, by ordinance, against

the abutting lands, before any taxbill was authorized to be issued or become a lien on any of such lands. R. S. 1899, secs. 5982, 5983, 5984; Westport v. Mastin, 62 Mo. App. 647; Westport v. Jackson, 69 Mo. App. 148. (2) It is alleged in the petition, therefore is conceded, that the board of aldermen of Westport made no levy by ordinance; also that no taxbill was issued by the city engineer of Westport against lot 2, block 49, Hyde Park. Had Kansas City, as successor of Westport, the power to enact the ordinance No. 9418, levying this assessment, and to issue the taxbill, sued on, against this lot omitted in Westport proceedings? (3) The power given to Westport, in sections 5982, 5983 and 5984, R. S. 1899, to levy the cost of a street paved, by special assessments against abutting lands was not continued nor transferred to Kansas City by the extension of Kansas City's limits, because both the statute authorizing the dissolution of the corporate existence of Westport and the Kansas City charter failed to reserve any of the charter powers of Westport for exercise by Kansas City. Harris v. Water Valley, 28 Miss. 659; Barkley v. Levee Com'rs, 93 U. S. 258; Dallas v. Ellison, 10 Tex. Civ. App. 28; County of Menard v. Kincaid, 71 Ill. 587; Cicero v. Hill, 193 Ill. 229; Vance v. Rankin, 194 Ill. 625; Sigur v. Crenshaw, 8 La. Ann. 401; Jefferson City v. Edwards, 37 Mo. App. 617; Kansas City v. Clark, 68 Mo. 588. (4) Kansas City's charter power to issue taxbills, for street pavement, is for work done under order and contract of Kansas City; not for work done under order and contract of Westport. K. C. Charter, art. IX, sec. 15; 13 Mo. App. 412; K. C. Charter, 1889, art. XVII, sec. 10; Haesler v. Sammelman, 101 Mo. 619; State ex rel. v. Fisher, 119 Mo. 351; St. Louis v. Laughlin, 49 Mo. 559; St. Louis v. Ag. & Mech. Assn., 108 Mo. 221.

*Scarritt, Scarritt & Jones,* for respondent, filed argument.

JOHNSON, J.—Action to enforce the lien of a special taxbill issued on account of the paving of a public street on which abuts the lot sought to be charged. The cause is here on the appeal of defendants, owners of the lot, from a judgment sustaining the lien.

In 1897, Wyandotte street in Westport, a city of the fourth class, was paved, pursuant to proceedings conforming to the law in every particular and, on November 18th of that year, the cost of the improvement was regularly apportioned and assessed against the property the law required to be charged therewith. Taxbills then were issued to the contractor (plaintiff), among them one for Lot 1, Block 49, Hyde Park. This lot did not abut on the street and, therefore, was not subject to assessment, and its inclusion was the result of a mistake in the description on the part of the officer who made out the bills.. He should have issued the bill against Lot 2, which fronted on the street paved and was subject to assessment. On December 2, 1897, shortly after the taxbills were issued, the territory embraced within the corporate limits of Westport was legally incorporated with Kansas City by an extension of the limits of the latter city under the statutory provisions now appearing in section 6399, Revised Statutes 1899, which, in part are as follows:

"That should such city by such extension of its territorial limits include any portion of any incorporated city, town or village, such extension shall be made to include the whole territory of such incorporated city, town or village, and upon such extension being made, the corporate existence of such incorporated city, town or village so included in such extension shall, *ipso facto*, cease, and all property and rights of every kind and nature belonging to and vested in such incorporated city, town or village, shall, by operation of law, at once pass to and vest in the city making such extension of its limits, and it shall be the duty of all officers and employees of such incorporated

city, town or village-having custody or control thereof, to surrender and deliver the same to such city so extending its limits; and such city shall, also, by operation of law, become liable to pay all debts and liabilities of such incorporated city, town or village."

The mistake in the taxbill was not discovered until after the extension was accomplished. Kansas City then passed an ordinance to correct the error and, pursuant thereto, issued to plaintiff a taxbill against the lot intended to be assessed. This bill is the subject of the present action. Defendants concede that had the city of Westport remained an independent municipality it would have been vested with the power to correct the error, but contend that, as the power died with the dissolution of the corporate existence of the city, the attempt of the absorbing city to exercise it being *ultra vires* must be held void. Should we sanction this contention, the result would be to free defendants' lot entirely from the just burden of paying its proportional share of the cost of the improvement.

Defendants argue that by the absorption of Westport, none of its charter powers and rights were conferred upon Kansas City except those mentioned in the provisions of the statute from which we have quoted and that unless we can find among them a transfer of the power to issue special taxbills to pay for the cost of street improvements made by Westport, such taxbills could not be issued lawfully by Kansas City, since its charter gives it the power only to issue taxbills for street improvements where the work is done under order and contract of Kansas City. Thus much of the argument of defendants we approve but we do not sanction the further contention that no provision appears in the statute under which Kansas City might remedy, as it did, the error in the taxbill issued by its predecessor in authority over the territory. Plaintiff, under a valid contract with Westport had completed the improvement, for the cost of which plaintiff had agreed to accept

special taxbills against the abutting property. By the terms of the contract and the law an obligation then rested on the city to give plaintiff a valid taxbill against each lot abutting on the street. By mere clerical error, this obligation was not discharged in full, and, had Westport continued to exist as a city, its refusal or failure to perform fully its part of the contract would have made it liable to pay plaintiff for that part of the cost of the work represented by the abortive taxbill. [Fisher v. St. Louis, 44 Mo. 482.] This obligation and liability devolved on Kansas City by operation of the statute when by the extension of its limits it destroyed the corporate existence of Westport. We think it was not the intention of the Legislature expressed in section 6399, supra, to impose such obligations and burdens on the absorbing city and to withhold from it the enjoyment of the rights and powers by which the extinguished municipality might have performed and discharged them had its existence continued. The construction placed by defendants on the language employed in the statute is much too narrow. They say the word "rights" as used in the clause "and all property and rights of every kind and nature belonging to and vested in such incorporated city, town or village, shall, by operation of law, at once pass to and vest in the city making such extension of its limits," is *ejusdem generis* with the word "property" and, therefore, does not include *powers*. It is an established rule of const. coron that "where general words follow particular ones the rule is to construe the former as applicable to the things or persons particularly mentioned." [City v. Laughlin, 49 Mo. 559.] But the function of this rule when applied to the interpretation of a statute is merely to aid the court in ascertaining the legislative purpose intended to be expressed therein. Construing together all the provisions of the statute before us, the intent disclosed by them is to give to the word "rights" the broader meaning of including not only property rights

but also such municipal powers as were necessary to the performance of the obligations and the discharge of the liabilities legally assumed and incurred by the defunct city. Such meaning does no violence to the definition given to the word "rights" by lexicographers and courts. [Century Dict.; Webster's Dict.; VII Words and Phrases Judicially Defined, p. 6220; People ex rel. v. Dikeman, 7 How. Pr. (N. Y.) 124.] In the case just cited, it is well said: "The word 'right' is defined by lexicographers to denote, among other things, property, interest, *power*, prerogative, immunity, privilege. [Walker's Dict., word "right".] In law, it is most frequently applied to property in its restricted sense, but it is often used to designate power, prerogative and privilege, and especially when applied to corporations. Indeed, a large proportion of the rights of political corporations consist of the powers conferred upon them."

The power to remedy the error and thereby to discharge the obligation of a contract which even the legislature had no right to impair was one of the incidents of the rights granted to Kansas City by the statute. This conclusion is in accord with what was said by the St. Louis Court of Appeals in Eyerman v. Blaksley, 13 Mo. App. l. c. 411, and is supported by every consideration of reason and justice.

Other points made have been examined and are found to be without merit. The judgment is affirmed. All concur.

## ON MOTION FOR REHEARING.

JOHNSON, J.—The judgment entered bears interest at the rate of eight per cent per annum from the date of the judgment. This was error. The interest allowed on the judgment should not exceed six per cent. St. Joseph ex rel. v. Forsee, 110 Mo. App. 242. In the opinion filed in that case we said: "The use of

the word 'interest' in the statute is a misnomer. It is not interest but is a penalty to which the owner is subjected for his neglect of duty in failing to pay,"— citing City of St. Louis v. Allen, 53 Mo. 57; Bank v. Woesten, 176 Mo. 60; Tipton v. Norman, 72 Mo. 380; Eyerman v. Blaksley, 78 Mo. 145.

Since it appears on the face of the judgment that the trial court erroneously imposed a penalty, the objection is not waived by the failure of the defendant to include it in his motion in arrest. Ransom v. Cobb, 67 Mo. 375; Ryan v. Growney, 125 Mo. 474; State ex rel. v. Chaney, 49 Mo. App. 511; Showles v. Freeman, 81 Mo. 540. For this error the judgment will be reversed and the cause remanded with directions to enter judgment for plaintiff in accordance with the views expressed. All concur.